UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PLIANT CORPORATION, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 09-10443 (MFW)<br><br>Jointly Administered<br><br>**Local Rule Waiver Requested**<br><br>Objection Deadline: March 26, 2009 at 4:00 p.m. (ET)<br>Hearing Date: April 2, 2009 at 3:00 p.m. (ET) |

**APPLICATION FOR AN ORDER AUTHORIZING THE DEBTORS AND DEBTORS IN POSSESSION TO EMPLOY AND RETAIN JEFFERIES AND COMPANY, INC. AS FINANCIAL ADVISOR PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a), *NUNC PRO TUNC* TO THE PETITION DATE, AND GRANTING WAIVER OF COMPLIANCE WITH DEL. BANKR. LR 2016-2(d) IN ACCORDANCE WITH DEL. BANKR. LR 2016-2(h)**

The above-captioned debtors and debtors in possession (each a "Debtor" and collectively, the "Debtors") hereby submit this Application (the "Application") for entry of an order, in substantially the form attached hereto as Exhibit A, authorizing the Debtors to employ and retain Jefferies & Company, Inc. ("Jefferies"), as financial advisor to the Debtors in these cases pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), *nunc pro tunc* to the Petition Date (as defined herein), and granting waiver of compliance with the information requirements relating to compensation requests set forth in Rule 2016-2(d) of the Local Rules of the United States Bankruptcy Court for the District of

---

[1] The Debtors are: Pliant Corporation (Tax ID No. XX-XXX7725), Pliant Corporation International (Tax ID No. XX-XXX3075), Uniplast Holdings, Inc. (Tax ID No. XX-XXX9589), Pliant Film Products of Mexico, Inc. (Tax ID No. XX-XXX0805), Pliant Packaging of Canada, LLC (Tax ID No. XX-XXX0929), Alliant Company LLC (Tax ID. No. XX-XXX6811), Uniplast U.S., Inc. (Tax ID. No. XX-XXX9066), Uniplast Industries Co. (N/A), and Pliant Corporation of Canada Ltd. (N/A). The mailing address for Pliant Corporation is 1475 Woodfield Road, Suite 700, Schaumburg, IL 60173.

Delaware (the "Local Rules") in accordance with Local Rule 2016-2(h), to the extent requested herein. The facts and circumstances supporting this Application are set forth in the Affidavit of Steve Strom in Support of the Application for an Order Authorizing the Debtors and Debtors in Possession to Employ and Retain Jefferies & Company, Inc. as Financial Advisor Pursuant to 11 U.S.C. §§ 327(a) and 328(a), *nunc pro tunc* to the Petition Date, and Granting Waiver of Compliance with Del. Bankr. LR 2016-2(d) in Accordance with Del. Bankr. LR 2016-2(h) (the "Strom Affidavit"), attached hereto as Exhibit B. In further support of this Application, the Debtors represent as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On February 11, 2009 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the United States Code (the "Bankruptcy Code"). The Debtors' cases are being jointly administered pursuant to an order of the Court.

2. The Debtors have continued in possession of their respective properties and have continued to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On February 24, 2009, the U.S. Trustee established the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014 and Local Rule 2016-2.

## RELIEF REQUESTED

5. By this Application, the Debtors seek authorization to employ and retain Jefferies as their financial advisor to perform investment banking and financial advisory services during all phases of these chapter 11 cases pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Local Rule 2016-2(h), *nunc pro tunc* to the Petition Date, upon the terms and conditions contained in that certain engagement letter dated October 1, 2008, by and between Jefferies and the Debtors (the "Engagement Letter"), a copy of which is attached hereto as Exhibit C and is incorporated by reference herein. By this application, the Debtors also seek an order granting a waiver of compliance with the information requirements relating to compensation requests set forth in Local Rule 2016-2(d), to the extent requested herein.

## BASIS FOR RELIEF

6. Jefferies is well qualified to assist the Debtors on the matters for which the Debtors proposes to retain it. Jefferies is an investment banking firm with its principal office located at 520 Madison Avenue, 12th Floor, New York, New York 10022, and is a registered broker-dealer with the United States Securities and Exchange Commission, and is a member of the Boston Stock Exchange, the International Stock Exchange, the National Association of Securities Dealers, the Pacific Stock Exchange, the Philadelphia Stock Exchange, and the Securities Investor Protection Corporation. Jefferies was founded in 1962 and is a wholly-owned subsidiary of Jefferies Group, Inc. Jefferies Group, Inc. is a public company and, together with its subsidiaries, has gross assets of nearly $20 billion in assets and approximately 2,000 employees in 20 offices around the world.

7. Jefferies provides a broad range of corporate advisory services to its clients including, without limitation, services pertaining to: (i) general financial advice, (ii) mergers, acquisitions, and divestitures, (iii) special committee assignments, (iv) capital raising,

and (v) corporate restructuring. Jefferies and its senior professionals have extensive experience in the reorganization and restructuring of troubled companies, both out-of-court and in chapter 11 proceedings. The employees of Jefferies have advised debtors, creditors, equity constituencies, and purchasers in many reorganizations. Since 2001, Jefferies has been involved in over 160 restructurings representing over $175 billion in restructured liabilities and has an understanding of the value added films and flexible food packaging industry.

8. Jefferies and its professionals have extensive experience in reorganization cases and has an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors, creditors and creditors' committees throughout the United States such as: <u>In re Philadelphia Newspapers, LLC</u>, <u>In re Nortel Networks Inc.</u>, <u>In re Apex Silver Mines Limited</u>, <u>In re Circuit City Stores Inc.</u>, <u>In re Quebecor World (USA) Inc.</u>, <u>In re Tropicana Entertainment, LLC</u>, <u>In re ASARCO LLC</u>, <u>In re AmeriServe Food Distribution, Inc.</u>, <u>In re Diamond Brands Operating Corp.</u>, <u>In re Federal Mogul Corporation</u>, <u>In re Heartland Wireless Communications</u>, <u>In re Delphi Corporation, et. al.</u>, <u>In re Foamex International Inc.</u>, <u>In re International Wireless Communications. Inc., et. al.</u>, <u>In re WXH Corp.</u>, and <u>In re XO Communications Inc.</u>.

9. In light of the size and complexity of these chapter 11 cases, the Debtors require the services of a seasoned and experienced financial advisor, and one that is familiar with the Debtors' businesses and operations and the chapter 11 process. Additionally, the Debtors believe that by having a financial advisor provide these services in these chapter 11 cases, other professionals in these cases -- and company officers who might otherwise handle complex financial and financing matters -- will be able to focus better on their respective competencies and their core tasks: to manage efficiently and effectively the Debtors' businesses and operations and to facilitate a successful chapter 11 process.

10. The Debtors have selected Jefferies, subject to the Court's approval, to serve as their financial advisor in connection with these chapter 11 cases. On October 1, 2008, the Debtors engaged Jefferies to provide financial advice in connection with the Debtors' attempts to complete a strategic restructuring, reorganization and/or recapitalization and to prepare for the commencement of these chapter 11 cases. In providing services to the Debtors in connection with these matters, Jefferies' professionals have worked closely with the Debtors' management and other professionals and have become well acquainted with the Debtors' operations, debt structure, creditors, business and operations and related matters. Accordingly, Jefferies has developed significant relevant experience and expertise regarding the Debtors that will assist Jefferies in providing effective and efficient services in these chapter 11 cases

11. The Debtors believe that Jefferies' general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Debtors in pursuing the services described herein and in the Engagement Letter and that the value to the Debtors of such services and the amount of compensation is reasonable regardless of the number of hours to be expended by Jefferies' professionals in the performance of the services to be provided to the Debtors pursuant to the Engagement Letter. With its experienced senior professionals and familiarity of the Debtors' businesses, Jefferies fulfills a critical role that complements the services offered by the Debtors' other restructuring professionals.

**SERVICES TO BE RENDERED**

12. As further set forth in the Engagement Letter, the Debtors have requested that Jefferies serve as financial advisor during these chapter 11 cases to perform financial

advisory and investment banking services (the "Services") including the following, as necessary and requested:[2]

    a) analyzing the business, operations, assets, financial condition and prospects of the Debtors;

    b) advising the Debtors on the current state of the "restructuring market";

    c) advising and assisting the Company in connection with analyzing, structuring, negotiating and effecting (including providing valuation analyses as appropriate) any potential restructuring of the Company's direct and indirect domestic and international subsidiaries, shareholder rights and related agreements, leases, capital leases, sales and brokerage agreements, management agreements, other contract rights and obligations;

    d) advising and assisting the Debtors in developing, examining and analyzing any potential or proposed strategy for restructuring or adjusting the Debtors' Senior Secured Credit Facilities and other outstanding indebtedness, including without limitation, the Company's 11.85% Senior Secured Notes due 2009 (the "11.85% Notes"), its 11.35% Senior Discount Notes due 2009 (the "11.35% Notes"), its 11.125% Senior Secured Notes due 2009 (the "11.125% Notes"), and its 18% Senior Subordinated Notes due 2012 (the "18% Notes", together with the 11.85% Notes, the 11.35% Notes, and the 11.125% Notes, the "Debt") or overall capital structure, through any offer by the Company with respect to restructuring any outstanding Debt, a solicitation of votes, approvals, or consents giving effect thereto including with respect to a prepackaged or prenegotiated plan of reorganization or other plan pursuant to chapter 11, of the Bankruptcy Code, the execution of any agreement giving effect thereto, an offer by any party to exchange or acquire any outstanding Debt, or any similar balance sheet restructuring involving the Company (the "Restructuring");

    e) advising and assisting the Company in connection with analyzing, structuring, and identifying potential investors, and acting as financial advisor, placement agent or underwriter, in any financing transaction on behalf of the Company pursuant to a rights offering or other offering of public or private securities (whether in the form of debt, equity or equity-linked securities) (a "Capital Raise"); and

---

[2] Capitalized terms not defined herein shall have the meaning set forth in the Engagement Letter.

f) rendering such other financial advisory services as may from time to time be agreed upon by the Company and Jefferies, including, but not limited to, providing expert testimony and other expert and financial advisory support, rendering such other financial advisory services as may from time to time be agreed upon by the Debtors and Jefferies, including but not limited to providing expert testimony, and other expert and financial advisory support related to any threatened, expected, or initiated litigation.

13. However, under the terms of the Engagement Letter, the Services provided by Jefferies will not include services relating to a sale of the Debtors.

## PROFESSIONAL COMPENSATION

14. Jefferies intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and any other applicable procedures and orders established by this Court and consistent with the proposed compensation set forth in the Engagement Letter (the "Fee Structure"). Further, because the Debtors are seeking approval of the Fee Structure under section 328(a) of the Bankruptcy Code, the Debtors believe that Jefferies' compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code and should not be deemed to constitute a "bonus" or fee enhancement under applicable law.

15. Section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

16. As set forth more fully in the Engagement Letter, and subject in its entirety to the terms set forth in the Engagement Letter, Jefferies will be compensated for the Services, subject to Court approval, through the following Fee Structure:[3]

    a) The Debtors shall pay to Jefferies a monthly fee (the "Monthly Fee") equal to $150,000 per month until the expiration or termination of the Engagement Letter. The first Monthly Fee shall be payable upon the execution of the Engagement Letter, and each subsequent Monthly Fee shall be payable in advance on the first day of each month. If payment of the first Monthly Fee is made for a partial month based upon the date on which the Engagement Letter is executed, then such Monthly Fee shall be pro rated from the date on which the Engagement Letter is executed to the end of the month;

    b) Upon the consummation of an out-of-court Restructuring or similar transaction, a transaction fee (the "Out-of-Court Fee") in an amount equal to the greater of (i) $2,500,000 or (ii) one percent (1.0%) of the current accreted value of all restructured Debt. For the purposes of this paragraph, the restructured Debt shall include any Debt which is restructured through any exchange, repurchase, acquisition, material modification to, or suspension of, the Debtor's obligations to pay interest or principal of such indebtedness, or any material amendments to the indentures governing any indebtedness. Out-of-Court Fees payable pursuant to this provision are due and payable simultaneously with the consummation of a Restructuring or a similar transaction;

    c) Upon the consummation of an in-court Restructuring or similar transaction, a transaction fee (the "In-Court Fee") in an amount equal to three quarters of one percent (0.75%) of the current accreted value of all restructured Debt. For the purposes of this paragraph the restructured Debt shall include any outstanding Debt of the Debtors which is restructured through any exchange, repurchase, acquisition, material modification to, or suspension of, the Debtor's obligations to pay interest or principal of such

---

[3] All terms set forth herein are subject in their entirety to the Engagement Letter. Except as explicitly stated herein, to the extent anything set forth in this Application conflicts with the Engagement Letter, the Engagement Letter controls.

indebtedness, or any material amendments to the indentures governing any indebtedness. The In-Court Fee shall be paid in lieu of, and not in addition to, the Out-of-Court Fee. In-Court Fees payable pursuant to this provision are due and payable simultaneously with the consummation of a Restructuring or a similar transaction; and

d) Jefferies shall credit against the Out-of-Court Fee or the In-Court Fee (as applicable) twenty-five percent (25%) of all Monthly Fees paid under paragraph (a) above after the payment of four (4) Monthly Fees (the "Credit"); provided that the Credit shall not exceed the Out-of-Court Fee or the In-Court Fee, respectively.

17. Subject to approval of this Court and the terms of the Engagement Letter, the Debtors shall reimburse Jefferies for all out-of-pocket expenses (including reasonable fees and expenses of its counsel, travel and lodging expenses, word processing charges, messenger and duplication services, facsimile expenses and other customary expenditures) incurred by Jefferies in connection with the engagement.

18. The Debtors believe that the Fee Structure is comparable to those generally charged by financial advisory and investment banking firms of similar stature to Jefferies and for comparable engagements, both in and out of bankruptcy proceedings, and reflect a balance between a fixed, monthly fee, and a contingency amount which are tied to the consummation and closing of the transactions and services contemplated by the Debtors and Jefferies in the Engagement Letter.

19. The hours worked, the results achieved and the ultimate benefit to the Debtors of the work performed by Jefferies in connection with this engagement may vary and the Debtors have taken this into account in setting the above fees. In order to induce Jefferies to do business with the Debtors, the fees were set with consideration of the difficulty of the assignment and the potential for failure (among other things).

20. Jefferies' mergers and acquisitions expertise as well as its capital markets knowledge, financing skills, and restructuring capabilities, some or all of which may be required by the Debtors during the term of Jefferies' engagement hereunder, were important factors to the Debtors in determining the Fee Structure and the Debtors believe that the ultimate benefit to the Debtors of Jefferies' services hereunder cannot be measured merely by reference to the number of hours to be expended by Jefferies' professionals in the performance of such services.

21. The Debtors also acknowledge and agree that the Fee Structure has been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Jefferies and its professionals, and in light of the fact that such commitment may foreclose other opportunities for Jefferies and that the actual time and commitment required of Jefferies and its professionals to perform the Services may vary substantially from week to week or month to month, creating "peak load" issues for the firm.

22. In light of the foregoing, the Debtors believe that the Fee Structure is both fair and reasonable under the circumstances of this engagement.

23. Prior to the Petition Date, Jefferies received approximately $767,951.33 from the Debtors for prepetition services rendered and expenses incurred in advising the Debtors. Any portion of these amounts received by Jefferies that has not yet been applied to prepetition fees and expenses will be applied when such amounts are identified, and should any amounts remain after such application, the remainder will be held for and applied against postpetition fees and expenses.

24. A breakdown of the payments to Jefferies within ninety (90) days of the Petition Date is provided in the Strom Affidavit filed concurrently with this Application.

25. In accordance with section 504 of the Bankruptcy Code, Jefferies has informed the Debtors that there is no agreement or understanding between Jefferies and any

other entity, other than an employee of Jefferies, for the sharing of compensation received or to be received for services rendered in connection with these cases.

## **DISINTERESTEDNESS OF PROFESSIONALS**

26. To check and clear potential conflicts of interest in these cases, Jefferies performed a conflicts search on the Debtors and other significant parties in interest (collectively, the "Potential Parties in Interest"). The identities of the Potential Parties in Interest were provided to Jefferies by the Debtors and set forth in Schedule 1 to the Strom Affidavit. Jefferies researched its computer database to determine its connections to the Potential Parties in Interest. Except as disclosed in the Strom Affidavit, Jefferies has indicated that based on the results of its computer database research conducted to date, and to the best of its knowledge, neither Jefferies, nor any employee thereof, has any connection with the Debtors, its creditors, equity holders, or any other parties-in-interest (as reasonably known to Jefferies) or their respective attorneys and accountants, or the United States Trustees, or any person employed in the office of the United States Trustee.

27. To the best of the Debtors' knowledge, information and belief, and except to the extent disclosed in the Strom Affidavit, Jefferies neither holds nor represents any interest adverse to the Debtors or their respective estates in the matters for which it is proposed to be retained. Accordingly, the Debtors believe that Jefferies is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code. The Debtors submit that their employment of Jefferies would be in the best interests of the Debtors and their respective estates. The Debtors' knowledge, information and belief regarding the matters set forth herein are based, and made in reliance, upon the Strom Affidavit.

28. Jefferies has indicated that if it discovers any information that is contrary to or pertinent to the statements made in the Strom Affidavit, Jefferies will promptly disclose such information to this Court, creditors of the Debtors and the United States Trustee.

## FEE APPLICATION AND WAIVER

29. Jefferies has informed the Debtors that it is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys and other professionals who are compensated on an hourly basis and that Jefferies' restructuring personnel do not maintain their time records on a "project category" basis. However, Jefferies' restructuring professionals, when formally retained in chapter 11 cases and when required by local rules, do, and in these chapter 11 cases will, keep reasonably detailed time records describing their general daily activities, the identity of persons who performed such activities, and the estimated amount of time expended on such activities on a daily basis.

30. The Debtors have been advised that to have Jefferies' restructuring personnel record their time and activities as prescribed by Local Rule 2016(d) would be, in each case, unduly burdensome and time-consuming.

31. As such, the Debtors respectfully submit that the time descriptions that Jefferies' restructuring personnel intend to submit to the Court should be sufficient for any review of the time entries in connection with a subsequent fee application. Accordingly, the Debtors respectfully request that notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, orders of this Court, or any guidelines regarding submission and approval of fee applications, in light of services to be provided by Jefferies and the structure of Jefferies' compensation pursuant to the Engagement Letter.

# OTHER PROVISIONS

## Indemnity Provision

32. As set forth in the Engagement Letter and Schedule A thereto and subject to the terms and conditions therein, the Debtors have agreed to the following (the "Indemnity Provision"):

   a) the Debtors agree to indemnify and hold harmless Jefferies and its affiliates, and each of their respective officers, directors, managers, members, partners, employees and agents, and any other persons controlling Jefferies or any of its affiliates (collectively, "Indemnified Persons"), to the fullest extent lawful, from and against any claims, liabilities, losses, damages and expenses (or any action, claim, suit or proceeding (an "Action") in respect thereof), as incurred, related to or arising out of or in connection with Jefferies' services (whether occurring before, at or after the date hereof) under the Engagement Letter, the Transaction or any proposed transaction contemplated by the Engagement Letter or any Indemnified Person's role in connection therewith, whether or not resulting from an Indemnified Person's negligence ("Losses"), provided, however, that the Debtors shall not be responsible for any Losses to the extent such Losses are determined, by a final, non-appealable judgment by a court or arbitral tribunal, to have resulted solely from Jefferies' gross negligence or willful misconduct.

   b) The Debtors agree that they will not settle or compromise or consent to the entry of any judgment in, or otherwise seek to terminate any pending or threatened Action in respect of which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is a party to such Action) unless Jefferies has given its prior written consent, or the settlement, compromise, consent or termination (i) includes an express unconditional release of such Indemnified Person from all Losses arising out of such Action and (ii) does not include any admission of fault on the part of any Indemnified Person.

   c) If, for any reason (other than the gross negligence or willful misconduct of an Indemnified Person as provided above) the foregoing indemnity is judicially determined to be unavailable to an Indemnified Person for any reason or insufficient to hold any Indemnified Person harmless, then

the Debtors agree to contribute to any such Losses in such proportion as is appropriate to reflect the relative benefits received or proposed to be received by the Debtors on the one hand and by Jefferies on the other, from the Transaction or proposed Transaction or, if allocation on that basis is not permitted under applicable law, in such proportion as is appropriate to reflect not only the relative benefits received by the Debtors on the one hand and Jefferies on the other, but also the relative fault of the Debtors and Jefferies, as well as any relevant equitable considerations. Relative benefits to the Debtors, on the one hand, and to Jefferies, on the other hand, shall be deemed to be in the same proportion as (i) the total transaction value of the Transaction or the proposed Transaction bears to (ii) all fees actually received by Jefferies in connection with the Agreement.

d) The Debtors agree to reimburse the Indemnified Persons for all expenses (including, without limitation, fees and expenses of counsel) as they are incurred in connection with investigating, preparing, defending or settling any Action for which indemnification or contribution has or is reasonably likely to be sought by the Indemnified Person, whether or not in connection with litigation in which any Indemnified Person is a named party; provided that if any such reimbursement is determined by a final, non-appealable judgment by a court or arbitral tribunal, to have resulted solely from Jefferies' gross negligence or willful misconduct, such Indemnified Person shall promptly repay such amount to the Debtors. If any of Jefferies' professional personnel appears as witness, is deposed or is otherwise involved in the defense of any Action against Jefferies, the Debtor or the Debtor's affiliates, officers, managers, directors or employees, the Debtor will pay Jefferies (i) with respect to each day that such person appears as a witness or is deposed and/or (ii) with respect to each day that such person is involved in the preparation therefor, (a) a fee of $4,000 per day for each such person with respect to each appearance as a witness or a deponent and (b) at a rate of $400 per hour with respect to each hour of preparation for any such appearance, and the Debtors will reimburse Jefferies for all reasonable out-of-pocket expenses incurred by Jefferies by reason of any of its personnel being involved in any such Action.

e) The indemnity, contribution and expense reimbursement obligations set forth in the Engagement Letter (i) shall be in addition to any liability the Debtors may have to any

Indemnified Person at common law or otherwise, (ii) shall survive the expiration or termination of the Agreement or completion of Jefferies' services hereunder, (iii) shall apply to any modification of Jefferies' engagement, (iv) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of Jefferies or any other Indemnified Person, (v) shall be binding on any successor or assign of the Debtor and successors or assigns to the Debtor's business and assets and (vi) shall inure to the benefit of any successor or assign of any Indemnified Person.

The Indemnity Provision additionally provides that:

> Any and all obligations and agreements of the Debtors under this Schedule A shall be equally applicable to, and binding upon, each of the Debtors' bankruptcy estates and any chapter 7 trustee appointed in the Debtors' bankruptcy Cases.

33. In addition, the Debtors and Jefferies have agreed to an additional indemnification related term that reflects, in substantially the same form, similar provisions approved by this Court in the following cases: <u>In re United Artists Theatre Company et al.</u>, Case No. 00-3514 (D. Del. November 14, 2000) (SLR); <u>In re AmeriServe Food Distribution, Inc.</u>, Case No. 00-0358 (Bank. D. Del. May 9, 2000) (PJW) and <u>In re Planet Hollywood International Inc.</u>, Case No. 99-3612 (Bankr. Del. Dec. 17, 1999) (JJF). Thus, the Debtors and Jefferies seek approval of the following additional term related to the Indemnity Provision:

> (a) if, before the entry of an order closing these chapter 11 cases, Jefferies believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Letter including, without limitation, the advancement of defense costs, Jefferies must file an application therefore in, and with, this Court, and the Debtors may not pay any such amounts to Jefferies before the entry of an order by the Court approving the payment. This subparagraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Jefferies for indemnification, contribution, or reimbursement and not to

limit the duration of the Debtors' obligation to indemnify
Jefferies.

34.     The Indemnification Provision was fully negotiated between the Debtors and Jefferies at arm's length and the Debtors believe the Indemnity Provision, including the additional term, is a reasonable term and condition of the Jefferies engagement. Unlike the market for other professionals that the Debtors may retain, indemnification is a standard term of the market for investment bankers and financial advisor. Jefferies and the Debtors believe that the Indemnity Provision is comparable to those generally obtained by financial advisory and investment banking firms of similar stature to Jefferies and for comparable engagements, both in and out of court.

### Arbitration Provision

35.     Pursuant to the Engagement Letter and subject to the terms and conditions set forth therein, Debtors and Jefferies further agreed to the following "Arbitration Provision":

> Any dispute, claim or controversy directly or indirectly relating to or arising out of the Engagement Letter, including, but not limited to: (a) the termination or validity of the Engagement Letter, (b) any alleged breach of the Engagement Letter or (c) the engagement contemplated by the Engagement Letter (any of the foregoing, a "Claim"), shall, in the event the Company has commenced a proceeding under chapter 11 of the Bankruptcy Code, be brought in the United States Bankruptcy Court for the jurisdiction in which the Company's chapter 11 cases were commenced. In the event the Company has not commenced a chapter 11 proceeding or if the applicable United States Bankruptcy Court declines jurisdiction over any such matter, the parties agree that any Claim shall be submitted to JAMS, or its successor, in New York, New York, for final and binding arbitration in front of a panel of three arbitrators with JAMS in New York, New York under the JAMS Comprehensive Arbitration Rules and Procedures (with each of Jefferies and the Company choosing one arbitrator, and the chosen arbitrators choosing the third arbitrator). The arbitrators shall, in their award, allocate all of the costs of the arbitration, including the fees of the arbitrators and the reasonable attorneys' fees of the prevailing party, against the party who did not prevail. The award in the arbitration shall be final and binding. The arbitration shall be governed by the Federal Arbitration Act, 9 U.S.C. §§1–16, and judgment upon the award rendered by the arbitrators may be

entered by any court having jurisdiction thereof. The Company agrees and consents to personal jurisdiction, service of process and venue in any federal or state court within the State of New York in connection with any action brought to enforce an award in arbitration.

36. The Debtors believe the Arbitration Provision is a reasonable term and condition of the engagement. An arbitration provision is a standard contract term for financial advisors and investment bankers. The Debtors believe that the Arbitration Provision is comparable to those generally obtained by financial advisory and investment banking firms of similar stature to Jefferies and for comparable engagements, both in and out of court.

### Bankruptcy Court Approval

37. Section 9 of the Engagement Letter contains provisions setting forth that the Engagement Letter is null and void at Jefferies' sole and absolute discretion, unless the order approving retention of Jefferies and the Engagement Letter (i) provides for retention of Jefferies *nunc pro tunc* to the commencement date of these cases, (ii) incorporates all of the terms and conditions of the Engagement Letter (explicitly including, but not limited to, the Debtors' acknowledgements and obligations set forth in Schedule A), (iii) binds the Debtors to such terms and conditions and (iv) provides that Jefferies' compensation shall be subject to the standard of review provided for in Section 328(a) of the Bankruptcy Code, and not subject to any other standard of review under section 330 of the Bankruptcy Code.

38. The Debtors believe that the provisions set forth above are reasonable terms and conditions of the Jefferies engagement. Furthermore, subject to the additional provision regarding indemnity set forth herein, the Debtors and Jefferies negotiated the Fee Structure in contemplation that the provisions of the Engagement Letter would be approved by this Court in its entirety.

# NOTICE

39. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the Creditors' Committee; (iii) counsel to the agent for the lenders under the prepetition credit facilities; (iv) counsel to the agent for the lenders under the proposed postpetition credit facility; (v) the indenture trustee for each series of notes; and (vi) any party who has requested to receive notices in these chapter 11 cases pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request that this Court enter an order, in substantially the form attached hereto as Exhibit A, (i) authorizing the Debtors to employ and retain Jefferies and Company, Inc. as financial advisor pursuant to 11 U.S.C §§ 327(a) of the 328(a), *nunc pro tunc* to the Petition Date, on the terms and conditions set forth herein, and (ii) granting such other and further relief as may be just and proper.

Dated: March 10, 2009

PLIANT CORPORATION
(for itself and on behalf of its Debtor subsidiaries)

_____
Stephen T. Auburn
Vice President and General Counsel
Pliant Corporation